| | | |
|---|---|---|
| PATRICIA TOLBERT<br>15621 Gilpin Mews Ln<br>Brandywine, Maryland 20613 | *<br>*<br>* | IN THE<br><br>CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | PRINCE GEORGE'S COUNTY |
| AMERICAN SECURITY<br>PROGRAMS, INC.<br>22900 Shaw Road<br>Dulles, VA 20166 | *<br><br>*<br><br>* | <br><br>Case Number: _____ |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Patricia Tolbert, by and through her attorney, Shani Dinovitz and the Law Office of Shani Dinovitz, LLC, files this Complaint against American Security Programs, Inc., and in support thereof states as follows:

## PARTIES

1. That the Plaintiff, Patricia Tolbert ("Ms. Tolbert"), is an adult citizen of the State of Maryland and a resident of Prince George's County.

2. That the Defendant, American Security Programs, Inc. ("ASP"), is a corporation doing business in Maryland and headquartered in Northern Virginia.

## FACTS



3. That on or about January 10, 2013, via a Letter of Intent, ASP offered Ms. Tolbert a position as a Federal Protective Service ("FPS") Armed Officer in Rockville, Maryland. The offer was contingent on Ms. Tolbert successfully completing FPS training and other requirements. Ms. Tolbert executed and returned the Letter of Intent to ASP, and was registered to attend an ASP training course titled FPS A-9 Remedial on January 17, 2013.

4. That Ms. Tolbert arrived for training on January 17, 2013, however, the instructors failed to offer any training. Instead of offering any training to Ms. Tolbert, ASP had Ms. Tolbert and a handful of other students gather in a classroom and wait for the remaining students to arrive. Once the remaining students arrived, the group immediately proceeded to the firing range.

5. That some or all of the other students in the training course had received prior training on January 14, 2013. ASP, however, first scheduled Ms. Tolbert to attend training on January 17, 2013.

6. That Ms. Tolbert realized that the holster provided for her use during training was not a standard holster. Rather, it was a push-button holster, which requires the user to press a button to facilitate release of the weapon from the holster.

7. That Ms. Tolbert immediately advised the course instructors that she was not comfortable or familiar with the holster, and that she required additional training. Specifically, Ms. Tolbert informed Instructor "Josh," one of three instructors, that she had never been trained using a push-button holster. Instructor Josh brushed off Ms. Tolbert's

concerns by responding that "it was easy." Instructor Josh further stated that if any student argues with him on the range, that student would be asked to leave.

8. That, after arriving at the range, Instructor "Scott" inquired of the students whether any of them had never used a push-button holster before. ("Who on this line has never used this holster before?") That Ms. Tolbert immediately raised her hand and again informed the instructors that she had not used that type of holster before, and that she required additional training before use.

9. That, in response to Ms. Tolbert's stated concerns, Instructor Scott wished to remove Ms. Tolbert from the firing line. However, Instructor Josh adamantly insisted that Ms. Tolbert proceed to shoot using the push-button holster, and commanded that Ms. Tolbert not be removed from the firing line, despite her verbal concerns.

10. That Ms. Tolbert immediately stated that she needed to contact headquarters and let them know that she needed more training before using the equipment. That Ms. Tolbert's request was heard by multiple witnesses, including ASP employee Officer Hussein.

11. That Instructor Josh responded to Ms. Tolbert's concerns by insisting that "somebody sent [Ms. Tolbert] here, and she is going to learn." Instructor Josh insisted that Ms. Tolbert remain in the firing line. Instructor Josh further stated that Ms. Tolbert "will be fine."

12. That, once on the firing range, Ms. Tolbert again expressed her concerns that she did not feel comfortable using the equipment ASP provided to her. That, while

attempting to use the push-button holster, the gun discharged, striking Ms. Tolbert with a bullet in her upper thigh.

13. That the bullet penetrated Ms. Tolbert's upper thigh, and exited through Ms. Tolbert's lower thigh. The bullet caused Ms. Tolbert extreme burning pain, as if her thigh had been torched on fire.

14. That Ms. Tolbert was forced to incur emergency and follow-up continuing medical treatment as a result of the bullet wound. Ms. Tolbert incurred permanent scarring at the bullet entrance site. For months following the accident, Ms. Tolbert was forced to dress the wound on a daily basis, changing blood-soaked bandages for clean ones. Ms. Tolbert also took pain medication to help ease the continuing burning and fiery sensation in her thigh.

15. That as a result of the bullet wound, Ms. Tolbert has continued difficulty walking, and is limited to positioning herself on the edge of her seat so as to keep her leg continually extended and elevated and avoid direct contact with the wound site. She is only able to sleep on her left side, and is unable to stand for more than a few minutes without experiencing unbearable pain. That in light of ASP's negligence and the resulting gunshot wound, Ms. Tolbert suffered and continues to suffer pain and permanent physical deformation, in addition to medical expenses and lost wages.

### Count I
*Negligence*

16. Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint with the same effect as if fully set forth herein.

17. ASP had an undeniable duty to safely conduct the January 17, 2013 training session, and to adequately respond to Ms. Tolbert's concerns regarding the holster and her request to contact headquarters and receive training. ASP failed to safely conduct the training session by failing to provide any training, and by repeatedly ignoring and dismissing Ms. Tolbert's concerns and requests for training.

18. As a direct and proximate result of ASP's negligence in this regard, and the breach of the duty owed by ASP to Ms. Tolbert, Ms. Tolbert was caused to suffer, and continues to suffer, physical injuries, physical pain and suffering, permanent physical deformation, permanent and embarrassing scarring, continued medical treatment, mental pain and suffering including undue emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and disability, and economic damages including, but not limited to, medical bills and expenses, and lost wages.

19. All of Ms. Tolbert's injuries, losses and damages were caused solely by the conduct, actions and inactions of ASP, as set forth herein, without any negligence, want of due care, or provocation on the part of Ms. Tolbert, either directly or indirectly.

WHEREFORE, the Plaintiff, Ms. Tolbert, demands judgment against the Defendant, ASP, in the amount of Five Hundred Thousand Dollars ($500,000) in compensatory damages.

## Count VI
### Negligent Hiring and Retention

20. Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint with the same effect as if fully set forth herein.

21. Defendants had a duty to use reasonable care to select instructors who are competent and fit to perform the duties of a firearms course instructor.

22. The three instructors leading the training course in question were hired by ASP to conduct the training session. ASP had constructive and/or actual knowledge of its employees' inclination for the type of negligent conduct that the ASP employees engaged in with regard to Ms. Tolbert.

23. Despite having a duty to terminate the employment of the instructors involved in the incident, ASP instead negligently maintained their employment.

24. ASP failed to use proper care in selecting, supervising and/or retaining, respectively, the instructors involved in the shooting. ASP should have made reasonable inquiry before hiring and/or retaining such instructors to ascertain their fitness to carry out their duties in a competent manner.

25. As a direct and proximate result of ASP's negligence in this regard, and the breach of the duty owed by ASP to Ms. Tolbert, Ms. Tolbert was caused to suffer, and continues to suffer, physical injuries, physical pain and suffering, permanent physical deformation, permanent and embarrassing scarring, continued medical treatment, mental pain and suffering including undue emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and disability, and economic damages including, but not limited to, medical bills and expenses, and lost wages.

26. All of Ms. Tolbert's injuries, losses and damages were caused solely by the conduct, actions and inactions of ASP, as set forth herein, without any negligence, want of due care, or provocation on the part of Ms. Tolbert, either directly or indirectly.

WHEREFORE, the Plaintiff, Ms. Tolbert, demands judgment against the Defendant, ASP, in the amount of Five Hundred Thousand Dollars ($500,000) in compensatory damages.

### Count III
### Negligent Supervision and Training

27. Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint with the same effect as if fully set forth herein.

28. ASP had a duty to use reasonable care to supervise and train its instructors to ensure that they are competent and fit to perform their duties.

29. The three instructors leading the training course in question were hired by ASP to conduct the training session. ASP had constructive and/or actual knowledge of its employees' inclination for the type of negligent conduct that the ASP employees engaged in with regard to Ms. Tolbert.

30. ASP failed to supervise or train the instructors involved in the incident in a manner sufficient to ensure that they would not engage in tortious conduct.

31. ASP knew or should have known that its supervision and training is inadequate to ensure that its instructors do not engage in tortious conduct. Had ASP exercised reasonable diligence and care, it would have known that its instructors were capable of inflicting this type of harm on the unsuspecting. Such harm includes the failure to provide any training to students such as Ms. Tolbert, forcing Ms. Tolbert to stay on the firing line and use a push-button holster despite her stated concerns, and ignoring Ms. Tolbert's pleas for training and her request to contact headquarters.

32. As a direct and proximate result of ASP's negligence in this regard, and the breach of the duty owed by ASP to Ms. Tolbert, Ms. Tolbert was caused to suffer, and continues to suffer, physical injuries, physical pain and suffering, permanent physical deformation, permanent and embarrassing scarring, continued medical treatment, mental pain and suffering including undue emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and disability, and economic damages including, but not limited to, medical bills and expenses, and lost wages.

33. All of Ms. Tolbert's injuries, losses and damages were caused solely by the conduct, actions and inactions of ASP, as set forth herein, without any negligence, want of due care, or provocation on the part of Ms. Tolbert, either directly or indirectly.

WHEREFORE, the Plaintiff, Ms. Tolbert, demands judgment against the Defendant, ASP, in the amount of Five Hundred Thousand Dollars ($500,000) in compensatory damages.

Respectfully submitted,

LAW OFFICE OF SHANI DINOVITZ, LLC

Shani Dinovitz
Law Office of Shani Dinovitz, LLC
2910 W. Strathmore Ave.
Baltimore, Maryland 21209
Tel.: 410-963-5804
Fax: 410-358-7724

*Counsel for Plaintiff*

## JURY DEMAND

The Plaintiff requests trial by jury in connection with all counts of her Complaint where trial by jury is available.

Respectfully submitted,

LAW OFFICE OF SHANI DINOVITZ, LLC

Shani Dinovitz
Law Office of Shani Dinovitz, LLC
2910 W. Strathmore Ave.
Baltimore, Maryland 21209
Tel.: 410-963-5804
Fax: 410-358-7724

*Counsel for Plaintiff*