**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| _____ | | |
| **PATRICIA TOLBERT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. WGC-13-2359** |
| | ) | |
| **AMERICAN SECURITY** | ) | |
| **PROGRAMS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____) | | |

## MEMORANDUM OPINION

Plaintiff Patricia Tolbert ("Ms. Tolbert") brought this action against Defendant American Security Programs, Inc. ("ASP") alleging (a) negligence, (b) negligent hiring and retention and (c) negligent supervision and training and seeking five hundred thousand dollars ($500,000) in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 12. The case thereafter was subsequently referred to the undersigned. *See* ECF No. 14.

Pending before the court and ready for resolution is ASP's Motion for Summary Judgment (ECF No. 24). Ms. Tolbert filed a Response in Opposition (ECF No. 27) and ASP filed a Reply (ECF No. 32). No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2014).

### BACKGROUND

Ms. Tolbert, an experienced security officer, sought employment with ASP. On January 10, 2013, via a Letter of Intent, ASP offered Ms. Tolbert a position as a Federal Protective Service ("FPS") Armed Officer. The offer of employment was contingent upon Ms. Tolbert

completing FPS training and other requirements.   Upon executing and returning the Letter of
Intent, Ms. Tolbert registered to attend an ASP training course, FPS A-9 Remedial, on January
17, 2013.  Compl. ¶ 3; Answer ¶ 3.

On January 17, 2013 Ms. Tolbert arrived at ASP's headquarters for training.  From there
she and other trainees departed for the shooting range.  Upon arrival Ms. Tolbert and the other
trainees initially gathered in a classroom.  One of the instructors explained in detail firearms
safety and range safety operations.   Ms. Tolbert and the other trainees signed paperwork
including ASP's Range Safety Rules, *see* ECF No. 24-8, and Range 82's[1] Range Safety Rules,
*see* ECF No. 24-9.

While in the classroom Ms. Tolbert noticed the other trainees were carrying a hostler
unfamiliar to her.  ECF No. 24-6 at 8 (Tolbert Dep. 50:18 - 511:2).  When the group relocated to
the range, Instructor Scott Butler ("Instructor Scott") asked the group if anyone has not used this
particular hostler.   Ms. Tolbert raised her hand.   In response Instructor Joshua McMahon
("Instructor Josh") approached Ms. Tolbert and demonstrated how to remove the weapon from a
push-button holster.  *Id.* at 9-10 (Tolbert Dep. 56:12 - 58:3).

Once Instructor Josh provided individualized instructions to Ms. Tolbert on using a push-
button holster, the trainees proceeded to fire.  Despite the instructions Ms. Tolbert still had some
questions.   She did not express her concerns to Instructor Josh "[b]ecause he stated in the
classroom that if we argued with him, we would be asked to leave the range, I said nothing else
to him."  *Id.* at 10 (Tolbert Dep. 59:4-6).

Ms. Tolbert expressed her concerns about being uncomfortable with the push-button
holster to some other trainees.   These other trainees believed Ms. Tolbert was doing okay

---

[1] Range 82 is not owned by ASP; the owner of Range 82 has promulgated its own range safety rules.  *See* ECF No.
27-14 at 12 (McMahon Dep. 62:14-20).

because she shot 235 out of 250 on the first course, the highest among all the trainees.  During

this first relay of live firing, Ms. Tolbert successfully holstered and re-holstered the weapon at

least 24 times.[2]   Nonetheless Ms. Tolbert continued to be uncomfortable with the push-button

hostler.  *Id.* (Tolbert Dep. 59:17 - 60:3).

The group then proceeded to a second series.

---

[2] Q    How many times would you say you had fired this gun before it struck your leg?
   A    Maybe four.
   Q    So when you were trying – – so when you're shooting – – when you were at three yards, did you shoot one time?
   A    I believe so.  I believe it was once.
   Q    So you shoot – – you stand there.  You get the command.  You're at three yards.  You shoot once?
   A    Yes.
   Q    Then you back up to seven or whatever it is.
   A    No.  When you stand – – when you're doing the three yards, you shoot once and you reholster.  Then he calls the second command and you shoot it twice.
   Q    You're still at three yards?
   A    Yes.
   Q    You reholster each time?
   A    Yes.  The third command you shoot three and then we reholster.
   Q    That's like six times at three yards?
   A    Yes.
   Q    You're reholstering it about twice.  You take it out, shoot once, back in, out twice, back in, three – – so three times?
   A    Yes.
   Q    Then you move back to what, how many yards?
   A    I believe it was seven.
   Q    Same process?
   A    Yes.
   Q    So that's three more times holstering?
   A    Yes.
   Q    And shooting?  Then nine?
   A    15.
   Q    Is that the last one?
   A    25 is the last one.
   Q    15, same drill, three times?
   A    15, six standing, six kneeling.
   Q    So there are more at the – –
   A    Yes.
   Q    After each one of those six exercises, are you reholstering the gun?
   A    Yes.
   Q    So that's 12 more times at least at the 15, correct?
   A    Correct.
   Q    Then 25?
   A    25 is on the right side, two standing, two kneeling.  Then the left side, two standing, two kneeling.
   Q    Then you start the process again?
   A    That's the end of the course.

ECF No. 24-6 at 12 (Tolbert Dep. 69:2 – 71:12).

Q      So you did the first series.  Then you started back again at the three yards?

A      Yes.

Q      Tell me what happened then.

A      When Instructor Scott called the commands, we were shooting at the three yards.  As I was attempting to reholster the firearm, I was trying to place the firearm into the hostler – – this type of holster, you have to hear a click.  I was waiting to hear a click.

       Instead of me hearing a click, I heard a fire.  I had shot myself in my upper thigh.  The firearm was discharged into my upper thigh.

Q      You ever hear of anybody doing anything like that before?

A      No.

Q      Why do you think it discharged?

A      Apparently my finger hit the trigger.

Q      Did you have your finger on the trigger?

A      My finger hit the trigger.

Q      When you were reholstering, show me where your hand was in relationship to this weapon.  How were you reholstering it?

A      My hand was on the butt of the weapon.  But I'm fumbling with it trying to insert it.  Then apparently my hand hit the trigger.

Q      Were you surprised that the gun went off?

A      Yes.

Q      Why?

A      Because I didn't know that I was shot.  I stood there froze[n] for a minute until I started feeling pain.

Q      You ever been shot before?

4

A      No.

Q      So in order for this gun to go off, clearly your finger would have had to be on or near – – be on the trigger in some way.  Is that fair to say?

       Unless you're – – let me put it this way.  Unless your finger is on the trigger, unless that trigger is somehow depressed, it's not going to go off itself, right?

A      Yes.

Q      Correct?

A      Yes.

Q      You had received instruction previously about making sure not to have your finger on the trigger when holstering the gun?

A      Yes.

Q      You received instruction on that that day as well, right?

A      Yes.

*Id.* at 11 (Tolbert Dep. 66:5 - 68:12).

## JURISDICTION

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Ms. Tolbert resides in Brandywine, Prince George's County, Maryland.  ASP is a Virginia corporation and has its principal place of business in Virginia.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  ASP removed this case from the Circuit Court for Prince George's County, Maryland to this court.  *See* ECF No. 1

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,*

477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.  However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

**DISCUSSION**

Before addressing the parties' positions regarding genuine issues as to any material fact, the court must address a preliminary matter. Since this court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Virginia law to substantive law questions since Ms. Tolbert was injured during a training session at a shooting range in Virginia.[3]

*A.     Negligence*

Ms. Tolbert asserts three claims against ASP. In the first count, negligence, Ms. Tolbert alleges,

> ASP had an undeniable duty to safely conduct the January 17, 2013 training session, and to adequately respond to Ms. Tolbert's concerns regarding the holster and her request to contact headquarters and receive training. ASP failed to safely conduct the training session by failing to provide any training, and by repeatedly ignoring and dismissing Ms. Tolbert's concerns and requests for training.

Compl. ¶ 17.

Under Virginia law, to establish a claim of negligence, Ms. Tolbert must demonstrate (a) a legal duty, (b) a breach of that duty and (c) "a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence." *Jordan v. Jordan*, 220 Va. 160, 162, 257 S.E.2d 761, 762 (1979). Ms. Tolbert has the burden of presenting "evidence of preponderant weight from which a jury can find that the defendant's negligence was a proximate cause of the accident." *Id.*

ASP claims, since Ms. Tolbert failed to offer any expert opinion establishing the standard of care for a firearms trainer, she cannot demonstrate the standard of care was breached and

---

[3] Both Ms. Tolbert and ASP cite to Maryland law as controlling. Although Ms. Tolbert is a resident of Maryland and initiated this lawsuit in a state court in Maryland, the undersigned finds the place of the alleged act or omission supplies the governing substantive law.

therefore cannot establish a claim of negligence.   ASP designated Paul Mazzei, Sr., Law

Enforcement & Security Consultant, to opine on the standard of care of firearms instructors and

whether ASP's instructors abided by that standard on January 17, 2013.  In her opposition Ms.

Tolbert denies the need for expert testimony.

> This case hinges on Defendant's negligence in creating a situation
> wherein Ms. Tolbert was denied instruction and was subsequently
> injured.  A layman reviewing the available evidence would find it
> immediately evident – without the assistance of an expert – that
> ASP woefully breached its duties to its students in conducting the
> "training" course.  This is well within the common knowledge of
> the jurors, and is not beyond the ken of the average layman.  The
> jury would not be left to speculate on how a firearms training class
> is to be conducted, because by *any* standard, a firearms training
> class is not to be conducted by ignoring the pleas of a student for
> training and by insisting she stay on the firing line.

ECF No. 27 at 13.  In its reply ASP reiterates, "because Plaintiff's complaints are based on

whether a firearms training was conducted properly and whether Defendant's instructors were

properly hired, trained, retained, supervised, these factual allegations by Plaintiff require an

expert who is familiar in hiring, training, retaining, and supervising firearms training staff to

provide analysis."  ECF No. 32 at 11.

       This court has not located a Virginia case specifically addressing alleged negligent

firearms training.   A plaintiff such as Ms. Tolbert ordinarily bears the burden of producing

sufficient evidence of negligence to outline the issue of fact for the jury's consideration.  When

an alleged breach of duty does not fall within the common knowledge of laymen, "expert

testimony is required to establish the appropriate professional standard, to establish a deviation

from the standard, and to establish that such a deviation was the proximate cause of the claimed

damages."   *Seward Int'l, Inc. v. Price Waterhouse*, 239 Va. 585,592, 391 S.E.2d 283, 287

(1990).  Ms. Tolbert argues she shot herself because ASP, via its employee Instructor Josh, failed

to instruct Ms. Tolbert on how to remove the gun from an unfamiliar holster.  Contrarily, ASP contends Ms. Tolbert shot herself, not because of her unfamiliarity with the holster, but because she had her finger on the trigger.  ASP claims, once Ms. Tolbert alerted its instructors about her unfamiliarity with the push-button holster, Instructor Josh provided 15 to 20 minutes of individualized one-on-one instruction just on the holster.  Instructor Josh further provided Ms. Tolbert additional instruction for the entire first course.  *See* ECF No. 27-14 at 19 (McMahon Dep. 95: - 96:4).  Both verbally and in writing ASP directed Ms. Tolbert and the other trainees to keep one's finger off the trigger until ready to shoot.  Moreover, Ms. Tolbert, an experienced security officer with extensive annual firearms training, knew to keep her finger off the trigger if she was not intending to fire.  These issues, as framed by the parties, "clearly lie[] [outside] the range of the jury's common knowledge and experience."  *Beverly Enterprises-Virginia v. Nichols*, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994).

The facts in the case are unlike the case of *Rives v. Bolling*, 180 Va. 124, 21 S.E.2d 775 (1942), where an off-duty police officer at his residence, after cleaning his revolver, forgot he reloaded the revolver and twirled it upon his finger while looking for cartridges to reload the revolver.  While twirling the revolver in the presence of three other individuals in a room, a bullet was discharged from the revolver which struck and instantly killed a 26 year old woman sitting on a bed about six to eight feet away from the police officer.  The Virginia Supreme Court noted no conflict in the evidence.  "The cause of the accident was undoubtedly the fault of Rives."  *Id.* at 129, 21 S.E.2d at 777.  A police officer such as Rives is charged with knowledge of the inherent dangerousness of handling a loaded weapon.  The jury, without the aid of expert testimony, could have determined, based on common knowledge and experience, that Rives' failure to determine whether the revolver was loaded before twirling it constituted negligence.

The issues as framed by Ms. Tolbert and ASP are in conflict. Ms. Tolbert therefore needed to present expert testimony to establish not only the standard of care but also how ASP's instructors breached that standard. *See District of Columbia v. Davis*. 386 A.2d 1195, 1200 (D.C. 1978)(finding "the questions of adequate weapons safety training and evaluation are technical questions not sufficiently within the common experience of jurors to obviate the need for expert testimony."). The fact that Ms. Tolbert was injured while attending ASP's firearms training is not sufficient to prove ASP's negligence.

> Negligence cannot be presumed from the mere occurrence of damage. The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant[] w[as] guilty of negligence which was a proximate cause of the event resulting in damage. The plaintiff must show how and why the incident happened. And if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.

*Parham v. Albert*, 244 Va. 73, 76, 418 S.E.2d 866, 868 (1992) (quoting *Lawrence v. Snyder*, 229 Va. 139, 142, 326 S.E.2d 690, 692 (1985)).

Because Ms. Tolbert has not presented any expert testimony to establish the appropriate standard of care, to establish a deviation from the standard and to establish that the deviation proximately caused her injury, ASP is entitled to judgment as a matter of law.

B.    *Negligent Hiring and Retention*

In Count II of her Complaint Ms. Tolbert alleges,

> Defendant[] had a duty to use reasonable care to select instructors who are competent and fit to perform the duties of a firearms course instructor.

> The three instructors leading the training course in question were hired by ASP to conduct the training session. ASP had constructive and/or actual knowledge of its employees' inclination for the type of negligent conduct that the ASP employees engaged in with regard to Ms. Tolbert.

Despite having a duty to terminate the employment of the instructors involved in the incident, ASP instead negligently maintained their employment.

Compl. ¶¶ 21-23.

Under Virginia law, to prevail on a claim that ASP negligently hired Instructor Josh, Instructor Scott and a third unnamed instructor, Ms. Tolbert must prove by the greater weight of evidence each of the following:

(a) ASP knew, or should have known, that Instructor Josh, Instructor Scott and a third unnamed instructor had a particular unfitness for the position so as to create a danger of harm to third parties,

(b) ASP hired Instructor Josh, Instructor Scott and a third unnamed instructor even after ASP knew or should have known about the unfitness,

(c) because ASP's hiring of Instructor Josh, Instructor Scott and a third unnamed instructor, Instructor Josh's, Instructor Scott's and a third unnamed instructor's unfitness proximately caused Ms. Tolbert's injury, and

(d) Ms. Tolbert's self-inflicted gunshot wound relates directly to the particular unfitness which was, or should have been known by ASP.

Va. Prac. Jury Instruction § 13:25 (Westlaw 2014).

In support of this claim Ms. Tolbert refers to an incident similar to her self-inflicted gunshot wound which occurred approximately six months before in the summer of 2012. According to Ms. Tolbert her self-inflicted gunshot wound and the incident six months prior are identical because she and the other trainee were attempting to re-holster a gun into a push-button holster when the gun discharged. *See* ECF No. 27 at 5.

Instructor Josh testified about this earlier incident during his deposition.

Q      And, what occurred in the summertime of 2012?

11

A       The same incident occurred.

Q       Okay.

        Can you clarify what you mean by the same incident?

A       An individual drew the gun from the bent – – shot – – fired the bent elbow position, reholstered the gun with finger on the trigger, discharging the firearm into his thigh.  It exited his thigh just above the knee.

Q       Okay.

        Was this also in an FPS A-9 remedial course, or entry or qualification course?

A       Remedial course.

Q       Okay.

A       The individual who shot himself was a firearms instructor in the army and on the army pistol team.

Q       Wow.

A       He took full responsibility.

*                              *                              *

Q       And, you mentioned the incident prior to the one involving Ms. Tolbert, where somebody shot – – also shot themselves in the leg.  And, you said that they took responsibility for that.

        What do you mean by that?

A       They accepted full responsibility for what they caused themselves.

Q       Well, why did they think that that happened in that person's case?

A       He had his finger on the trigger while reholstering the gun.

Q       And, when you say he took responsibility, did he you appreciate that that was a problem, or did he think that it – – had something to do with his training, or – –

> A    He accepted that he made a mistake, and asked for additional training.  In fact, he paid out of pocket for additional training.

ECF No. 27-14 at 28, 31 (McMahon Dep. 131:3 - 132:2, 146:15 - 147:11).

The court finds Ms. Tolbert fails to establish a claim of negligent hiring. Critical to such a claim is evidence that an employer such as ASP, *prior to* hiring Instructor Josh, knew or should have known of Instructor Josh's dangerous propensities to train students improperly in the use of firearms resulting in students self-inflicting themselves with gunshot wounds.  Ms. Tolbert has not presented *any* evidence of any such dangerous propensities known or constructively known by ASP *before* ASP hired Instructor Josh.   Furthermore, Ms. Tolbert has not alleged any dangerous propensities of Instructor Scott or a third unnamed instructor.   Instructor Josh's alleged actions involving the army student "that occurred after [Instructor Josh] was hired cannot be used to show that [Instructor Josh] had a propensity to act dangerously before he was hired." *Beach v. McKenney*, No. 2010-224, 2011 WL 7493433, at *6 (Va. Cir. Ct. Apr. 5, 2011).  ASP is entitled to judgment as a matter of law with regard to Ms. Tolbert's claim of negligent hiring.

"In order to establish a claim for negligent retention, it must be proven that (1) the employer knows or should know that the employee poses an unreasonable risk of harm to others, (2) the employer fails to attempt to prevent further harm by the employee, and (3) the employee subsequently injures another person." *Tomlin v. International Business Machines Corp.*, No. CL-2011-8763, 2012 WL 7850902, at *8 (Va. Cir. Ct. Feb. 13, 2012) (citing *Fisher v. A.W. Temple, Inc.*, 2000 Va. Cir. LEXIS 193 (August 4, 2000)).  Ms. Tolbert charges ASP with knowledge of the self-inflicted gunshot wound of an army student in the summer of 2012 under the supervision of Instructor Josh, Instructor Scott and a third unnamed instructor.  Despite this

occurrence, ASP retained the three instructors and, six months later, Ms. Tolbert suffered the same injury under the supervision of the three instructors.

Improperly instructing students on the use of a holster which causes students to shoot themselves is the dangerous propensity of ASP's firearms instructors, according to Ms. Tolbert. Contrarily, ASP asserts the issue is not a student's unfamiliarity with a holster but the student improperly maintaining his or her finger on the trigger.  Instructor Josh testified that the army student accepted full responsibility for his self-inflicted gunshot wound.  Ms. Tolbert has not rebutted this testimony.   Since Ms. Tolbert charges ASP's firearms instructors posed an unreasonable risk of harm to others, Ms. Tolbert should have presented expert testimony explaining how and why the instructors' dangerous propensities, *i.e.*, their method of instruction or lack thereof or use of a particular holster, posed an unreasonable risk to students.  Without expert testimony a jury would be left to speculate whether ASP's retention of the three instructors after the summer 2012 incident constitutes negligence because the jury would be required to speculate whether the self-inflicted shooting during the summer of 2012 was attributable to poor instruction or by failure to abide by range safety rules.  Such an issue is outside the realm of common knowledge and experience of laymen.  ASP is entitled to judgment as a matter of law with regard to Ms. Tolbert's claim of negligent retention.

C.      *Negligent Supervision and Training*

In Count III of her Complaint Ms. Tolbert alleges,

> ASP had a duty to use reasonable care to supervise and train its instructors to ensure that they are competent and fit to perform their duties.
>
> The three instructors leading the training course in question were hired by ASP to conduct the training session.  ASP had constructive and/or actual knowledge of its employees' inclination

> for the type of negligent conduct that the ASP employees engaged
> in with regard to Ms. Tolbert.
>
> ASP failed to supervise or train the instructors involved in
> the incident in a manner sufficient to ensure that they would not
> engage in tortious conduct.
>
> ASP knew or should have known that its supervision and
> training is inadequate to ensure that its instructors do not engage in
> tortious conduct.  Had ASP exercised reasonable diligence and
> care, it would have known that its instructors were capable of
> inflicting this type of harm on the unsuspecting.  Such harm
> includes the failure to provide any training to students such as Ms.
> Tolbert, forcing Ms. Tolbert to stay on the firing line and use of a
> push-button holster despite her stated concerns, and ignoring Ms.
> Tolbert's pleas for training and her request to contact headquarters.

Compl. §§ 28-31.

Whether Virginia recognizes a claim for negligent supervision is debatable.  A number of

Virginia circuit courts have declined to recognize a tort of negligent supervision in light of the

Supreme Court of Virginia's opinion in *Chesapeake & Potomac Telephone Co. v. Dowdy*, 235

Va. 55, 356 S.E.2d 751 (1988).  "There can be no actionable negligence unless there is a legal

duty, a violation of the duty, and a consequent injury.  In Virginia, there is no duty of reasonable

care imposed upon an employer in the supervision of its employees under these circumstances

and we will not create one here."  *Id.* at 61, 356 S.E. 2d at 754 (citation omitted).  Other Virginia

circuit courts have found that *Dowdy* did not state there could never be a situation where an

employer would have a duty to supervise an employee, but only that under the circumstances of

the *Dowdy* case, no such duty existed.  *See e.g. Johnson-Kendrick v. Sears, Roebuck & Co.*, 39

Va. Cir. 314, 319 (1996).  The undersigned concurs with this latter interpretation of *Dowdy*.

Presuming a claim for negligent supervision would be viable, Ms. Tolbert fails to

demonstrate this allegation because she lacks expert testimony to establish ASP's legal duty,

ASP's violation of the duty and a consequent injury.  Such an allegation of negligent supervision

would be outside the common knowledge and experience of layman.  ASP is entitled to judgment as a matter of law with regard to Ms. Tolbert's claim of negligent supervision.

Finally, this court turns its attention to the claim of negligent training.  To adequately plead this claim, Ms. Tolbert "must allege facts that establish the employer 'knew that [the employee's] past actions strongly suggested that [the employee] was unfit for a job which involved an unreasonable risk of harm to others.'"  *Hernandez v. Lowe's Home Centers, Inc.*, Civil No. CL10-8412, 2011 WL 8964944, at *4 (Va. Cir. Ct. Aug. 1, 2011) (citation omitted). Assessing whether Instructor Josh, Instructor Scott and the third unnamed instructor were unfit as firearms instructors would not be within the realm of laymen's common knowledge or experience.  "[T]he employer's duty to train the employee runs only so far as the employee can be deemed reasonably unable to understand the risk that is involved with the employment." *Garcia v. B & J Trucking, Inc.*, 80 Va. Cir. 633, 634 (2010).  Ms. Tolbert would need to present expert testimony to show how the instructors were unfit and why ASP knew or should have known the instructors were unfit for the positions of firearms instructors and therefore would pose an unreasonable risk of harm to others.  Because she has not presented such evidence, she has not presented a prima facie case of negligent training.  ASP is entitled to judgment as a matter of law with regard to Ms. Tolbert's claim of negligent training.

## **CONCLUSION**

For the foregoing reasons the court finds there are no genuine issues as to any material fact and ASP is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An Order will be entered separately.


_ March 26, 2015_____                    _____/s/_____
            Date                                        WILLIAM CONNELLY
                                              UNITED STATES MAGISTRATE JUDGE